**WO**  BL

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Nathaniel Hearn,  )  No. CV 03-1924-PHX-MHM (MEA)
            )
   Plaintiff,  )  **ORDER**
            )
vs.          )
            )
Joseph M. Arpaio, et al.,  )
            )
   Defendants.  )
            )

Plaintiff Nathaniel Hearn filed a *pro se* civil rights action pursuant to 42 U.S.C. § 1983 alleging that Sergeant Riddle violated his constitutional rights (Doc. #11). Defendant Riddle seeks summary judgment (Doc. #35). The Court will grant summary judgment and dismiss Plaintiff's action.

**I. Background**

Plaintiff alleged that Riddle retaliated against him for filing grievances (Doc. #11).[1] Plaintiff maintained that he attempted to file a grievance in order to complain about Detention Official Glee soliciting an inmate to physically assault him (Id.). Plaintiff gave the grievance to Defendant, who subsequently moved Plaintiff to administrative segregation and "wrote-up" Plaintiff on various occasions (Id.).

---

[1] The Court dismissed the remaining Defendants and claims due to Plaintiff's failure to state a claim upon which relief could be granted (Doc. #15).

Defendant moved for summary judgment on the grounds that (1) Defendant did not take any adverse action because any decision was made by other individuals; (2) any action taken against Plaintiff was not due to the exercise of a protected right conduct but for a legitimate correctional interest; and (3) Plaintiff's First Amendment rights were not chilled (Doc. #35).  Plaintiff responded that he was denied his right to file grievances because Defendant refused to forward them (Doc. #40).  Plaintiff maintained that there was no legitimate correctional purpose for denying his right to grieve (Id.).  Plaintiff contended that he was retaliated against for filing grievances (Id.).

**II. Motion for Summary Judgment**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion, and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323.  If the moving party meets its initial responsibility, the burden then shifts to the opposing party who must demonstrate that the fact in contention is material and that the dispute is genuine. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 250 (1986); see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). A fact is material if it might affect the outcome of the suit under the governing law. Anderson, 477 U.S. at 248.  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 250.  The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  Finally, when considering a summary judgment motion, the evidence of the

1 non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor."
2 Anderson, 477 U.S. at 255.

3 Initially, Defendant is entitled to summary judgment as to Plaintiff's claim that
4 Defendant violated his constitutional rights by failing to process his grievances (Doc. #40)
5 because Plaintiff had no free-standing constitutional right to a grievance process (Doc. #40).
6 See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) (providing that a prisoner does not
7 have a protected liberty interest in prison grievance procedures). Plaintiff, however, does
8 have a constitutional right against being retaliated against for filing a grievance. See Bradley
9 v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) (providing that a prisoner may not be penalized
10 for the contents of a grievance); Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th
11 Cir.1989) (providing that a prisoner may not be labeled a "snitch" in retaliation for filing
12 grievances).

13 **A. Factual Background**

14 Plaintiff was placed in the Maricopa County jail system in January 2004, after his
15 arrest for robbery and felony flight (Doc. # 41). Although Plaintiff believes he should have
16 been placed in general population based on the pending charges, due to a Plaintiff's failure
17 to register as a sex offender, he was placed in a "Nature of Charge" (NOC) unit (Doc. #36,
18 ex. 1 ¶ 4; ex. 2 ¶ 5; Doc. #41; Doc. #43 Rick Bailey's Aff.). The NOC unit is reserved for
19 inmates who have been charged with sex crimes against children and is designed to protect
20 the inmate (Doc. #36, ex. 1 ¶ 5; ex. 2 ¶ 5). The inmate remains in that unit unless he
21 becomes a security threat, which is defined as an inmate who is written up for a major
22 violation (Id. ex. 1 ¶ 6; ex. 2 ¶ 6). If the inmate is a security threat, he is moved to
23 involuntary administrative segregation (Id.). An inmate in administrative segregation has the
24 same privileges as inmates in general population, except he is confined to his cell 23 hours
25 a day (Id. ex. 1 ¶ 7; ex. 2 ¶ 7).

26 On June 14, 2004, Plaintiff was involved in a multi-inmate fight (Doc. #36, ex. 1 ¶ 9).
27 Plaintiff maintained that he and a fellow inmate were assaulted by 16 other inmates, while
28 Defendant contended that Plaintiff was the aggressor (Id.; Doc. #41). Plaintiff suffered a cut

- 3 -

1 to his face (Doc. #41). Officer Zoutte wrote a Disciplinary Action Report (DAR) on the
2 incident and Sergeant Darrell Browning reviewed the report and recommended that Plaintiff
3 be placed in administrative segregation (Doc. #36, ex. 1 ¶ 10). Bureau Hearing Officer
4 Sergeant Woodruff affirmed the recommendation and upon an appeal Lieutenant Lisa Smith
5 upheld the recommendation (Id. ¶¶ 10-11). Plaintiff was also placed in disciplinary
6 segregation, but he maintained that he was told that he would be returned to the NOC unit
7 after he was released from disciplinary segregation (Doc. #41). Although Browning
8 recommended Plaintiff be reclassified and placed in administrative segregation, Plaintiff was
9 mistakenly returned to the NOC unit on June 22, 2004 (Doc. #36, ex. ¶ 12).

10   After his return to the NOC unit, Plaintiff came to believe that the attack was based
11 on orders from Officer Glee (Doc. #41). On August 4, 2004, Plaintiff instituted a grievance
12 complaining about the "ordered assault" and submitted the grievance to Defendant who said
13 he would make a copy and return it to Plaintiff (Id.). Defendant met with Lieutenant Kelly
14 and Glee about the grievance, and during the investigation it was determined that Plaintiff
15 was mistakenly returned to the NOC unit (Doc. #36, ex. 1 ¶13). Kelly spoke with Lieutenant
16 Thompson, and it was determined that Plaintiff must be moved to administrative segregation
17 (Id.).

18   Approximately two weeks after giving Defendant his grievance, Plaintiff inquired
19 about his grievance and requested copies (Doc. #41). On that same day, Plaintiff was moved
20 to administrative segregation (Id.). Defendant attested that the move was not retaliatory and
21 that he lacked the ability to reclassify an inmate (Doc. #36, ex. 1 ¶ 14; ex. 2 ¶ 9; Doc. #43
22 Rick Bailey's Aff.). Instead, the decision was made by the Special Management Review
23 Committee (Id.). Plaintiff was returned to the NOC unit approximately one month later, on
24 September 23, 2004 (Doc. #43, Doc. #45)

25   Plaintiff also alleged that DARs were issued in retaliation (Doc. #1). Plaintiff did not
26 identify the specific DARs, but Defendant indicated his participation in two separate DARs
27 (Doc. #36). First, Defendant reviewed a DAR submitted by another officer because Plaintiff
28

- 4 -

1  was in an unauthorized area and forwarded it to a hearing officer who rendered a decision
2  (Id. ex. 1 ¶ 15).

3  Second, based on information received from Defendant, on December 1, 2004,
4  another officer issued a DAR against Plaintiff due to his appearance (Doc. #41).
5  Specifically, Plaintiff had rolled-up pants, a sign of gang affiliation and a possible hiding
6  place for contraband (Doc. #36, ex. 1 ¶ 17). Defendant attested that he issued the DAR
7  because of the security and safety threat the rolled-up pants presented (Id.). The Hearing
8  Officer found that Plaintiff had not intentionally violated the policies (Doc. #41, ex. B).

9  Plaintiff subsequently grieved the loss of his grievance form regarding the assault
10 (Doc. #41, ex. D). The grievance went to the External Referee, who determined that
11 correctional officials were at fault for losing the grievance (Id.). Plaintiff submitted two
12 additional grievances regarding his move to administrative segregation, alleging that it was
13 due to racial discrimination and retaliation (Doc. #43, attachments to Susan Fisher's Aff.)
14 These grievances were eventually addressed by an External Referee (Id.). Plaintiff also filed
15 several additional grievances which were resolved at the Bureau Hearing Officer Level (Id.).

16 **B. Legal Standard and Analysis**

17 "[A] viable claim of First Amendment retaliation entails five basic elements: (1) An
18 assertion that a state actor took some adverse action against an inmate (2) because of (3) that
19 prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First
20 Amendment rights, and (5) the action did not reasonably advance a legitimate correctional
21 goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). Plaintiff bears the initial
22 burden of pleading and proving the absence of a legitimate correctional goal. Bruce v. Ylst,
23 351 F.3d 1283, 1289 (9th Cir. 2003). However, if there is a genuine issue of material fact
24 as to whether the action was taken in retaliation for the exercise of a constitutional right,
25 Defendant can not defeat a retaliation claim by merely articulating a general justification for
26 a neutral process. Id. The Court should afford appropriate deference and flexibility to prison
27 officials in the evaluation of the proffered goal. Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir.
28

- 5 -

1  1995). Legitimate penological goals include such things as preserving institutional order and
2  discipline. Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 2004).

3  Defendant argued that Plaintiff's First Amendment rights were not chilled as seen by
4  the fact that he continued to file grievances. Defendant's argument is without merit because
5  "[s]peech can be chilled even when not completely silenced." Rhodes, 408 F.3d at 568.

6  **C. Analysis**

7  Plaintiff alleged that Defendant placed him in administrative segregation and issued
8  DARs in retaliation of Plaintiff filing a grievance (Doc. #1).

9  **1. Administrative Segregation**

10 In order to prevail on a claim of retaliation, Plaintiff must be able to demonstrate that
11 Defendant took an adverse action against him, and that such action did not reasonably
12 advance a legitimate correctional goal. Rhodes, 408 F.3d at 567-68. Plaintiff's placement
13 in administrative segregation for less than two months was an adverse action. The evidence,
14 however, demonstrates that such transfer was not the result of a decision made by Defendant.
15 Defendant lacked the ability to transfer or reclassify Plaintiff. Defendant merely reported to
16 his superior, Kelly, that in the course of investigating a grievance he discovered that
17 Browning had recommended Plaintiff's placement in administrative segregation. Kelly
18 reported the situation to Thompson, and the Special Management Review Committee
19 reclassified Plaintiff and placed him in administrative segregation. Plaintiff does not contest
20 this, merely stating that Defendant stated that he "knew how to handle wise guys like
21 Plaintiff." Even assuming Defendant made that statement, the decision to place Plaintiff in
22 administrative segregation had already been made by individuals other than Defendant.
23 Thus, the undisputed facts demonstrate that Defendant did not take an adverse action against
24 Plaintiff in regard to administrative segregation.

25 Alternatively, there was a legitimate correctional goal in placing Plaintiff in
26 administrative segregation. Plaintiff was placed in the NOC unit due to his failure to register
27 as a sex offender. The NOC unit is designed to protect inmates charged with sex crimes from
28 other inmates. Plaintiff is not challenging his placement in the NOC unit in the instant

1 action. In addition, the presence of a violent inmate in the NOC unit represents a safety and
2 security risk.  Plaintiff was placed in disciplinary segregation and recommended for
3 administrative segregation based on a disciplinary charge of assault.  Although Plaintiff
4 alleged that he is was not the instigator, he has not challenged the assault charge in the instant
5 action. The fact that Plaintiff was mistakenly placed in the NOC unit after his release from
6 disciplinary segregation does not result in the subsequent correct placement losing its
7 legitimate correctional goal.  Ironically, Plaintiff would not have been placed in that setting
8 had he not filed his grievance because that grievance resulted in jail officials discovering that
9 Plaintiff was not placed in administrative segregation as directed.  However, his placement
10 in that setting was predetermined and not in response to his grievance.  Accordingly,
11 Defendant is entitled to summary judgment as to this issue.

### 2. Disciplinary Action Reports

13 The summary judgment evidence also demonstrated that Defendant did not retaliate
14 against Plaintiff in regard to the two DARs.  As for the first DAR, Defendant neither
15 authored or authorized it.  He merely reviewed the DAR and forwarded to the next level.
16 The evidence conclusively demonstrated that Defendant was not involved with any adverse
17 action with regard to the DAR issued due to Plaintiff's presence in an unauthorized area.
18 The evidence also demonstrated that the DAR issued due to Plaintiff's appearance was
19 not in retaliation for Plaintiff's filing of grievances.  First, the DAR was issued more than
20 four months after the grievance was filed, and more than two months after Plaintiff was
21 placed back into the NOC unit. Second, the DAR was based on a legitimate correctional goal
22 of safety and security. Defendant attested that Plaintiff had rolled-up pants, which often was
23 a sign of gang affiliation and a hiding place for contraband.  Plaintiff offered no reason for
24 the rolled-up pants.  The Hearing Officer's determination that Plaintiff did not intend to
25 violate the policies does not result in a different conclusion.  Plaintiff violated the policies,
26 and his actions represented a safety concern. Finally, this DAR was the only one specifically
27 authorized by Defendant. Accordingly, a single DAR issued for the violation of a jail policy

1 and issued more than two months after Plaintiff was returned to Defendant's unit, does not
2 support a claim of retaliation.  Thus, Defendant is entitled to summary judgment.

3     **IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. #35) is
4 **granted**.  The Clerk of Court must enter judgment in favor of Defendant, and dismiss with
5 prejudice Plaintiff's action.

6     DATED this 4th day of May, 2007.

_____
Mary H. Murgula
United States District Judge